ARNOLD PONTIAC–GMC,
INC., Plaintiff,

v.

GENERAL MOTORS
CORPORATION, Defendant.

Civ. A. No. 82–1861.

United States District Court,
W.D. Pennsylvania.

Nov. 21, 1988.

---

Gaylord W. Greenlee, Belinda D. Atwood, Washington, Pa., James L. Weisman, Barry J. Lipson, Pittsburgh, Pa., for plaintiff.

James A. Mollica, Jr., Meyer Darragh Buckler Bebenek & Eck, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

MENCER, District Judge.

In this action, Arnold Pontiac–GMC, Inc. alleges that General Motors Corporation violated section one of the Sherman Act, 15 U.S.C. § 1. Both parties have filed motions for summary judgment which are presently before this court.

### Facts

For purposes of these cross-motions, the relevant facts can be summarized briefly. Arnold Pontiac–GMC, Inc. (Arnold Pontiac) applied to General Motors Corporation (GMC) for a Buick dealership. GMC took several actions potentially indicating that it was going to award the dealership to Arnold Pontiac, such as leaving an application and automobile order forms. These actions have enhanced significance because Arnold Pontiac had applied for a Buick dealership numerous times over the previous ten years and GMC had never given Arnold Pontiac an application or order forms.

Before GMC had made a final determination about Arnold Pontiac's application, four members of the Pittsburgh–Area Buick Dealers approached the GMC representative and stated that the association did not want GMC to award a dealership to Arnold Pontiac, and that they would refuse to participate in GMC's promotional programs if GMC gave Arnold Pontiac the dealership. The GMC representative summarized this conversation in an internal memorandum.

Several months later, GMC informed Arnold Pontiac that it would not award the dealership unless Arnold Pontiac agreed to build a new facility at a different location.

GMC's conditions were consistent with the position it had taken over the previous ten years and appear to arise out of legitimate business concerns that Arnold Pontiac's current location was too remote. GMC's behavior becomes suspicious only in light of the coercion applied by the Pittsburgh–Area Buick Dealers.

### Legal Analysis

#### A. Cross–Motions for Summary Judgment

The standard for cross-motions for summary judgments is the same as for individual motions for summary judgment. The court handles cross-motions as if they were two distinct, independent motions. *Rains v. Cascade Industries, Inc.*, 402 F.2d 241, 245 (3d Cir.1968). Thus, in evaluating each motion, the court must consider the facts and inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Rule 56(c) of the Federal Rules of Civil Procedure provides that a court shall grant summary judgment if it finds that, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

#### B. Burden of Proof

In antitrust cases, there are two basic routes by which liability can be imposed. *Business Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. ——, ——, 108 S.Ct. 1515, 1519, 99 L.Ed.2d 808, 816 (1988). The normal route is called the "rule of reason." Under the rule of reason, "the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Id.* Under some circumstances, however, the court takes a shortcut and holds the conduct to be per se illegal, obviating the need to prove an unreasonable restraint on competition. *Id.* A court will find agreements illegal per se if their "nature and necessary effect are so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality." *Id.* (quoting *National Soc. of Professional Engineers v. United States*, 435 U.S. 679, 692, 98 S.Ct. 1355, 1365, 55 L.Ed.2d 637 (1978)).

An important distinction to make when evaluating a potentially anticompetitive agreement is whether the agreement is "vertical" or "horizontal." *Id.* 485 U.S. at ——–——, 108 S.Ct. at 1522–23, 99 L.Ed.2d at 820–21. Vertical agreements are those between parties at different levels of the distribution chain, such as a manufacturer and distributor. Horizontal agreements are those among parties at the same level of the distribution chain, such as an agreement among distributors. Horizontal agreements are generally per se illegal, whereas non-price vertical agreements may be subject to the rule of reason. For example, if the various distributors reach a horizontal agreement to divide the market geographically, it is a per se violation, whereas if a manufacturer and a dealer agree to an exclusive franchise, it is not a per se violation. *Id.*

In this case, we have elements of both horizontal agreements and vertical agreements. The agreement between the members of the Pittsburgh–Area Buick Dealers resembles a pure horizontal agreement. The agreement between GMC and the association resembles a vertical agreement. A central issue in the trial of this case, therefore, is whether this hybrid agreement is more vertical or horizontal.

An extensive review of the case law on vertical and horizontal agreements failed to uncover a case on point. *Business Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. ——, ——, 108 S.Ct. 1515, 1519, 99 L.Ed.2d 808, 816 (1988), the recent Supreme Court case that GMC relies on extensively, involved a single distributor putting pressure on the manufacturer, and thus did not have the horizontal element present in this case.

After examining in detail the language used by the courts in analyzing vertical and horizontal agreements, we have concluded that the agreement among the members of

the Pittsburgh–Area Buick Dealers and subsequently imposed on GMC constitutes a horizontal agreement.

The Supreme Court indicated that it would find such an arrangement horizontal in *Sharp,* 485 U.S. at ——, n. 4., 108 S.Ct. at 1523, n. 4, 99 L.Ed.2d 821, n. 4. In summarizing and adopting an argument by Robert Bork, the Court wrote, "a facially vertical restraint imposed by a manufacturer only because it has been coerced by a 'horizontal carte[1]' agreement among his distributors is in reality a horizontal restraint.... [A] restraint is horizontal not because it has horizontal effects, but because it is the product of a horizontal agreement." *Id.* (discussing a passage from R. Bork, The Antitrust Paradox 288 (1978)). The scenario described by the Court is, of course, precisely the situation in this case.

Similarly, in *Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 678 F.2d 742 (7th Cir.1982), the court wrote, "The motive of supplier and distributors alike could thus be described as wanting to eliminate price cutters yet there would be no per se illegality so long as the supplier was not just knuckling under to the distributors' desire for less competition." *Id.* at 744. Under the facts as alleged by Arnold Pontiac, GMC was "knuckling under" to pressure from the Pittsburgh–Area Buick Dealers when it did not award the dealership, and thus would be subject to per se liability under the rule in *Renfield.*

Finally, the Third Circuit addressed our precise dilemma in *Tunis Bros. Co., Inc. v. Ford Motor Co.,* 763 F.2d 1482 (3d Cir. 1985). Although addressing a conspiracy that involved only one dealer, the court wrote:

> In those situations where the termination of a distributor has allegedly occurred due to a conspiracy between the supplier and one or more of its distributors, the courts have been uncertain as to whether to apply the "rule of reason" or the *per se* rule because, [sic] such cases have *both* horizontal and vertical elements.... The dilemma has been described as follows:

> The actual termination of the distributor is imposed vertically by the supplier, yet the inducement for the termination may come horizontally from the complaining competitors of the terminated distributor. Thus, although the form of such a 'mixed termination' conspiracy may be vertical, *the competitive purpose and effect of the conspiracy is more similar to horizontal conspiracies that exclude competitors of the conspirators from a market.*

*Id.* at 1497 (emphasis added) (quoting Piraino, *Distributor Terminations Pursuant to Conspiracies Among a Supplier and Complaining Distributors: A Suggested Antitrust Analysis,* 67 Cornell L.Rev. 297, 298 (1982)).

The result posited by these courts and scholars comports with this court's understanding of the economic justification for the distinction between horizontal and vertical agreements. *See generally* Areeda, Antitrust Law, ¶¶ 1453 et seq. Non-price vertical agreements to restrain trade can be motivated by legitimate competitive concerns. A manufacturer may find that it can compete best with other manufacturers by awarding exclusive dealerships within each region. Thus, vertical non-price restraints can further interbrand competition, which is the primary goal of antitrust laws, and are subject to the rule of reason. *Id.*

A horizontal agreement by dealers to divide the market into regions and to grant exclusive access to those regions is only motivated by the dealers desire to eliminate intrabrand competition within the region and thereby to maximize profits. Such agreements have no pro-competitive motivation, and are consistently found illegal per se. *Id.*

In this case, an association of dealers reached an agreement to restrict access to the market. Their agreement was plainly horizontal, plainly anticompetitive, and plainly illegal per se. This horizontal agreement to restrict the market, however, was feasible only with the cooperation of GMC. If GMC acceded to the pressure of the dealers' association, it joined the con-

842

spiracy and incurred the attendant per se liability.

### C. Cross-Motions for Summary Judgment

Although we have resolved Arnold Pontiac's burden of proving the consequences of the alleged conspiracy, Arnold Pontiac also has a threshold hurdle to leap. GMC's liability for the alleged conspiracy depends upon whether it denied Arnold Pontiac's application independently or because of the coercion of the Pittsburgh–Area Buick Dealers.

The law is clear that an independent decision by a manufacturer not to deal with a particular dealer is not an antitrust violation. In *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984), the Court wrote, "there is the basic distinction between concerted and independent action.... Section 1 of the Sherman Act requires that there be a 'contract, combination ... or conspiracy' between the manufacturer and other distributors in order to establish a violation. Independent action is not proscribed. A manufacturer of course generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently." *Id.* at 760, 104 S.Ct. at 1469 (citations omitted).

Furthermore, the Court has delineated the quantum of proof necessary to submit the issue of concerted activity to the jury. Evidence that dealers have complained to the manufacturer is not sufficient to prove that the manufacturer was influenced by those complaints. "There must be evidence that tends to exclude the possibility that the manufacturer and nonterminated distributors were acting independently." *Monsanto*, 465 U.S. at 764, 104 S.Ct. at 147.

■ The Third Circuit, in an opinion in this case, held that summary judgment in favor of GMC was inappropriate. *Arnold Pontiac–GMC, Inc. v. General Motors Corp.*, 786 F.2d 564, 574 (3d Cir.1986). The court found that the steps taken by GMC toward awarding the dealership to Arnold Pontiac and the conversation between the Pittsburgh–Area Buick Dealers and GMC tend to exclude the possibility that GMC acted independently. *Id.* At trial, however, "GMC may be able to convince the fact finder that the evidence does not support the plaintiff's allegations." *Id.* This critical issue of whether GMC acted independently or succumbed to the association's pressure is a genuine issue of material fact which precludes the granting of either motion for summary judgment.

### ORDER

AND NOW, this ___ day of November, 1988, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that:

(1) Arnold Pontiac–GMC, Inc.'s Motion for Summary Judgment is DENIED; and

(2) General Motors Corporation's Motion for Summary Judgment is DENIED.