## ROY F. WESTON SERVICES, INC.

**v.**

## HALLIBURTON NUS ENVIRONMENTAL CORPORATION

**v.**

## ROY F. WESTON, INC., and Indiana Lumbermen's Mutual Insurance Co.

**Civ. A. No. 91–1133.**

United States District Court,
E.D. Pennsylvania.

Jan. 29, 1993.

Memorandum Denying Reconsideration
March 16, 1993.

John N. Joseph, Philadelphia, PA, for U.S. E.P.A. and the U.S.

Suzan E. De Busk, Edward S.G. Dennis, Jr., Morgan, Lewis & Bockius, Philadelphia, PA, for NUS Corp.

Barry M. Klayman, Steven A. Arbittier, Wolf, Block, Schorr and Solis-Cohen, Jane Landes Foster, Stradley Ronon Stevens & Young, Debra C. Swartz, Wolf, Block, Schorr and Solis-Cohen, Philadelphia, PA, for Indiana Lumbermen's Mut. Ins. Co.

## *MEMORANDUM AND ORDER*

HUTTON, District Judge.

Presently before the Court are two Motions in Limine filed on behalf of defendant Halliburton NUS Environmental Corporation ("Halliburton NUS") and the plaintiff's response thereto. The first is a Motion in Limine to Preclude Introduction of Certain Pre-Contract Correspondence and Discus-

sions as Parol Evidence to Vary or Explain the Terms of the Contract and the second is a Motion in Limine to Exclude Certain Opinion Testimony by Plaintiff's Expert Thomas Hernon.

## FACTUAL BACKGROUND

Plaintiff, Roy F. Weston Services, Inc. ("Weston"), is a Texas corporation involved in the business of providing demolition, dismantling and disposal services. On January 26, 1990, Weston entered into a subcontracting agreement with defendant Halliburton NUS to provide its services at the Douglassville Disposal Site located in Berks County, Pennsylvania. Douglassville is a federal Superfund site on the National Priorities List.[1] The site is the location of a former oil reprocessing facility. The hazardous waste of concern in the present subcontracting agreement was composed of oils, sludges, solvents, asbestos and contaminated solids such as building materials and tanks.

Pursuant to the subcontracting agreement, Weston was to dismantle the facility and to dispose of the hazardous liquids and sludges located in the above ground tanks on the site. The specific requirements of the contract included the following: site preparation and maintenance; removal of asbestos materials; pumping of liquids and sludges from the tanks to tanker trucks and the draining of free liquids from the site; dismantling and removal of all buildings, tanks, equipment, piping, drums and miscellaneous materials; waste hauling and disposal; and related services, such as health and safety, sampling and analysis, and decontamination of equipment materials and personnel. The total contract price was not to exceed $3,256,731.00.

During execution of the contract, Weston experienced difficulty with the pumpability of the contents of the tanks. Weston encountered solid material which could not be removed via pumping. Relations between the two parties broke down and Halliburton NUS eventually terminated Weston's rights under the contract. Weston subsequently brought the instant suit.

## DISCUSSION

### A. PAROL EVIDENCE

Halliburton NUS has filed a motion in limine to exclude certain letters and conversations which occurred between the parties prior to the signing of the agreement. Halliburton NUS contends that the parol evidence rule bars admittance of the information. Weston argues that the agreement is ambiguous and, therefore, the information is admissible under an exception to the parol evidence rule.

Under Pennsylvania law, the parol evidence rule bars consideration of preliminary negotiations, conversations and verbal agreements when the parties to a contract have reduced their agreement to writing and it appears that the writing represents the entire agreement. *Hershey Foods Corp. v. Ralph Chapek, Inc.,* 828 F.2d 989, 994 (3rd Cir.1987). However, where a writing is determined to be ambiguous, extrinsic evidence may be admitted to assist in the interpretation of the agreement. *Mellon Bank, N.A. v. Aetna Business Credit,* 619 F.2d 1001, 1010 (3rd Cir.1980). The question of ambiguity is a question of law for the court to decide. *St. Paul Fire and Marine Ins. Co. v. Lewis,* 935 F.2d 1428, 1431 (3rd Cir.1991); *Kroblin Refrigerated Xpress, Inc. v. Pitterich,* 805 f.2d 96, 101 (3rd Cir.1986). If ambiguity is found, the court will allow the use of extrinsic evidence to aid the trier of fact in its interpretation of the ambiguity. *Mellon Bank,* 619 F.2d at 1011.

In determining the question of ambiguity, the Court must consider "the actual words of the agreement themselves, as well as any alternative meanings offered by counsel, and extrinsic evidence offered in support of those alternative meanings." *St. Paul Fire and Marine,* 935 F.2d at 1431. Ambiguity has been defined as "intellectual uncertainty; ... the condition of admitting two or more meanings, of being understood in more

1. The National Priorities List is a ranking of hazardous waste sites compiled by the federal government pursuant to the Comprehensive Environmental Response Act ("CERCLA") and the Superfund Amendments and Reauthorization Act ("SARA").

than one way, or referring to two or more things at the same time." *Id. quoting Mellon Bank N.A. v. Aetna Business Credit*, 619 F.2d 1001, 1011 (3rd Cir.1980). However, the Court must avoid torturing the language of the agreement to create ambiguity where none exist. *St. Paul Fire and Marine*, 935 F.2d at 1431.

This Court must determine whether the agreement is ambiguous with respect to the scope of the contents of the tanks at the Douglassville site. It is Weston's position that the contract called for the removal of liquids and sludges, and not the solids which Weston encountered during its performance of the contract. Halliburton NUS argues that the contract requires the complete removal of the contents of the tanks including the tanks themselves and, therefore, including any non-liquid, non-pumpable solid materials in the tanks.

The contract language in describing the scope of the project and work on the tanks suggests that all materials, whether liquid or solid, were to be removed from the tanks so that the tanks themselves could be dismantled.[2] The contract called for the complete removal of the contents of the tanks.[3] The contract also recognized that some of the contents might not be pumpable, yet still required its removal.[4]

In a letter dated December 5, 1989, Weston described the process by which it intended to remove the contents of the tanks. The letter specifically mentions the existence of solids within the tanks.[5]

Accordingly, this Court finds that the Contract is not ambiguous with respect to the removal of the contents of the tanks located at the Douglassville site. Therefore, the admission of parole evidence in the form of letters and telephone conversations to interpret the agreement with respect to the removal of solids is prohibited.

**B. *EXPERT TESTIMONY***

The defendant has also filed a Motion in Limine to preclude certain testimony of the plaintiff's expert witness, Mr. Hernon. The defendant's basis for such exclusion is that the testimony amounts to the expert giving his conclusions as to the significance of various facts; doing so invades the province of the judge and jury, and goes against the general rule that has developed which does not allow opinion testimony on ultimate questions of law. Plaintiff contends that Mr. Hernon's testimony is admissible for the purpose of providing information about the customs and practices in contract administration. In response, defendant argues that in the absence of a showing of ambiguity, testimony of custom and practice is inadmissable because it will not assist the trier of fact and it will confuse the jury.

Before deciding whether the expert testimony meets the requisites of 702 of the Federal Rules of Evidence, this Court must first determine whether the offered testimony is admissible. Custom and practice in a trade may be admitted in contract disputes

2. 1.3 SCOPE OF PROJECT

The scope of this project includes the dismantling of the Former Process Facility and appurtenances and the disposal of materials and wastes associated with these activities.

3. TANKS

PART 1—GENERAL

1.1 SUMMARY

1.1.1 This section details the work to be performed to dismantle and prepare for offsite hauling and disposal all of the tanks and contents ...

1.1.2 This work shall include, but not be limited to, the removal, containerization, and temporary storage of the present contents of the tanks ...

. . . . . .

PART 3—EXECUTION

3.1 REMOVAL OF CONTENTS

3.1.1 The Contractor shall remove the present contents of the tanks as a prelude to decontamination and dismantling activities. [...]

4. 3.1.3 In general, it is anticipated that the tank contents can be removed via pumping; however, the Contractor shall be prepared to provide alternative removal means, as needed. Any method of removing the tank contents other than pumping shall be subject to the approval of NUS.

5. "In order to maximize pumpability, [Weston] intends to recirculate oils and sludges within tanks as required, to blend the materials and to liquefy thixotropic **solids.**" [emphasis added] (Defendant's Motion in Limine, Exhibit B, p. 2).

to assist in contract interpretation. *Harbor Ins. Co. v. Lewis,* 562 F.Supp. 800, 803 (1983). However, evidence of custom and practice may not prevail over the unambiguous language of a contract. *George Hyman Const. Co. v. U.S.,* 215 Ct.Cl. 70, 564 F.2d 939, 945 (1977). "Trade custom or usage cannot be used to contradict plain contractual language." *McDevitt Mechanical Contractors, Inc. v. United States,* 21 Cl.Ct. 616, 620 (1990). In the absence of ambiguity, extrinsic evidence of trade custom or usage will not be admitted. *Harbor Ins. Co. v. Lewis,* 562 F.Supp. 800 (1983). Therefore, this Court must also determine if any ambiguity exists in the contract with respect to procedures for contract change to determine whether testimony of custom and practice will be admissible.

Weston contends through the advancement of expert testimony concerning custom and practice that under the contract it was "appropriate for NUS to implement a change order to address the outstanding issues raised by the differing site conditions and that Weston was prevented from proceeding with any further work without such a change order." (Defendant's Answer to Plaintiff's Motion in Limine to Exclude Expert Testimony, at ¶¶ 5–7). Halliburton NUS maintains that under the contract no such change order was necessary.

The clause in dispute is the Changes Clause under Article 9—Changes and Differing Site Conditions of the contract. This clause provides:

> 9.1(a) The Contracting Officer may, at any time, without notice to the sureties, if any, by written order designated or indicated to be a change order, make changes in the work within the general scope of the subcontract, including changes—
>
> (1) In the specifications (including drawings and designs);
>
> (2) In the method or manner of performance of the work;
>
> (3) In the Purchaser-furnished facilities, equipment, materials, services, or site; or
>
> (4) directing acceleration in the performance of the work.

If the Court were to stop its reading of the contract at this point the defendant's contentions would have merit. Pursuant to provision 9.1(a), the Contracting Officer has the discretion to issue a change order for differing site conditions. With no further direction from the terms of the contract it would appear that evidence of custom and practice would provide the trier of fact with valuable guidance as to whether or not the defendant should have issued a change order and whether or not such inaction would prevent plaintiff from continuing its performance. However, the contract further provides:

> 9.1(b) Any other written or oral order (which, as used in this paragraph (b), includes direction, instruction, interpretation, or determination) from the Contracting Officer that causes a change shall be treated as a change order under this clause; provided, that the Contractor gives the Contracting Officer written notice stating (1) the date, circumstances, and source of the order and (2) that the Contractor regards the order as a change order.

This clause directly contradicts plaintiff's assertion. Under 9.1(b), if a contracting officer fails to issue a change order but directs the contractor to continue performance, the contractor may give notice to the contracting officer that the order to continue is considered a change order and the contractor pursuant to 9.1(d) may recover its costs. Clause 9.1(b) technically shifts the power for declaring change orders from the Contracting Officer to the Contractor, in this case, from Halliburton NUS to Weston. If this Court were to accept Weston's contention that the failure of Halliburton NUS to issue a change order prevented Weston from continuing performance, this Court would effectively write 9.1(b) out of the Contract. Weston had available a means under 9.1(b) to continue performance and protect its interests regardless of the Halliburton NUS's failure to physically issue a change order.

Since the interpretation advanced by Halliburton NUS is unreasonable given the existence of 9.1(b), the contract is not ambiguous. Therefore, the testimony discussing custom and practice is not admissible.

In light of the foregoing, defendant's Motion in Limine to Exclude Testimony by Plaintiff's Expert Thomas Hernon is **GRANTED.**

This Court's appropriate Orders follow.

### *ORDER*

AND NOW, this 29th day of January, 1993, upon consideration of Defendant Halliburton NUS Environmental Corporation's Motion in Limine to Preclude Introduction of Certain Pre-Contract Correspondence and Discussions as Parol Evidence to Vary or Explain the Terms of the Contract and Plaintiff's response thereto, IT IS HEREBY ORDERED that Defendant's Motion is **GRANTED.**

### *ORDER*

AND NOW, this 29th day of January, 1993, upon consideration of Defendant Halliburton NUS Environmental Corporation's Motion in Limine to Exclude Certain Opinion Testimony of Plaintiff's Expert Thomas Hernon, and Plaintiff's response thereto, IT IS HEREBY ORDERED that Defendant's Motion is **GRANTED.**

IT IS FURTHER ORDERED that at the trial of this matter, Plaintiff is precluded from offering testimony from its expert, Thomas Hernon, as to the parties' legal rights and obligations under Contract Article 9.1, or otherwise that Halliburton NUS had to issue a change order for Weston to be permitted to remove and dispose of the tank contents.

### *MEMORANDUM AND ORDER ON RECONSIDERATION*

Presently before the Court is plaintiff Roy F. Weston, Inc.'s ("Weston") Motion for Reconsideration of the Court's Memorandum and Order entered February 2, 1993, granting Defendant's Motion in Limine to Preclude Certain Pre-Contract Correspondence and Discussions.

### *BACKGROUND*

This Court's Memorandum and Order of January 29, 1993 addressed two motions in limine filed on behalf of defendant Halliburton Nus Environmental Corp. ("Halliburton Nus"). The first of Halliburton NUS's motions requested that the Court preclude Weston from introducing certain pre-contract correspondence and discussions as parol evidence to vary or explain the terms of the contract during trial.[1] The Court held, *inter alia*, that the contract between Weston and Halliburton NUS unambiguously required the removal of all of the contents of the tanks at the Douglassville Disposal Site. The Court's Memorandum, in pertinent part, provided:

> The contract language in describing the scope of the project and work on the tanks suggests that all materials, whether liquid or solid, were to be removed from the tanks so that the tanks themselves could be dismantled. [Citing contract at 1.3 "Scope of Contract"]. The contract called for the complete removal of the contents of the tanks. [Citing contract at 1.1.1, 1.1.2 and 3.1.1]. The contract also recognized that some of the contents might not be pumpable, yet still required its removal. [Citing contract at 3.1.3].

*Roy F. Weston, Inc. v. Halliburton NUS Environmental Corp.*, 839 F.Supp. at 1155, 1156.

Weston's present motion for reconsideration challenges the Court's preclusion. Weston asserts that implicit to the Court's holding is the determination that Weston was required to remove non-pumpable solids for the original contract price. Weston argues that this determination is clearly erroneous because it fails to take into account:

> (a) the representations in the contract documents concerning the nature of the tanks contents;
>
> (b) the presence of a differing site conditions clause in the contract;
>
> (c) NUS's desire to place all bidders on an equal footing by assuming that the tank

1. The Court's holding in the second motion in limine is not challenged by Weston's motion for reconsideration.

contents were pumpable so that the bids could be compared on an "apples to apples" basis;

(d) the fact that Weston and the other bidders were *not* allowed to inspect or test the contents of the tanks and, therefore, were required to base their bids on the assumption that the tank contents were pumpable; and

(e) the interpretation of the contract by NUS itself as well as by the governmental agencies which reviewed the contract.

(Weston's Memorandum in Support at 4).

## DISCUSSION

As the Court noted in its January 29, 1993 opinion, parol evidence may not be introduced where the parties to a contract have reduced their agreement to writing and it appears that the writing represents the entire agreement. *Hershey Foods Corp. v. Ralph Chapek, Inc.,* 828 F.2d 989, 994 (3rd Cir.1987). However, where a writing is determined to be ambiguous, such evidence may be admitted to assist in the interpretation of the agreement by the jury. *Mellon Bank, N.A. v. Aetna Business Credit,* 619 F.2d 1001, 1010 (3rd Cir.1980). Further, extrinsic evidence will be considered in determining the question of law, whether an ambiguity exists. *St. Paul Fire and Marine Ins. Co. v. Lewis,* 935 F.2d 1428, 1431 (3rd Cir. 1991).

Addressing the question of ambiguity, the Court determined that the contract was not ambiguous with respect to the removal of the contents of the tanks. The Court held that the contract required the removal of all the materials from the tanks at the Douglassville Site regardless of whether or not the contents existed in a solid, liquid or sludge state. As a result, Weston could not use pre-contractual correspondence and communications to prove that the contract did not require it to remove solids from the tanks since the contract was not ambiguous. 839 F.Supp. at 1155.

The contract defining these duties provides:

> The Scope of the project includes the dismantling of the Former Process Facility and appurtenances and the disposal of materials and wastes associated with these activities ... Specific project activities include the following:
>
> —Liquid and sludge collection.
>
> —Pumping all liquids and sludges from the site tanks to tanker trucks.

Contract Section 01010, Summary of Work ¶ 1.3.

> The contractor shall remove the present contents of the tanks as a prelude to decontamination and dismantling activities.

Contract Section 02054, Removal of Contents ¶ 3.1.1.

Further, with respect to the contents in the tanks the contract specifically expressed that:

> In general, it is anticipated that the tank contents can be removed via pumping; however, the Contractor shall be prepared to provide alternative removal means as needed. Any method of removing the tank contents shall be subject to the approval of NUS.

Contract section 02054, Removal of Contents ¶ 3.1.2. Given these provisions, it is apparent that the parties foresaw two possibilities with respect to the removal of the contents of the tanks. The contract contains no guarantee that the contents would be pumpable. Therefore, any solid materials in the tanks that could not be pumped out of the tanks still had to be removed.[2]

The tanks contained non-pumpable materials which had to be removed. There is no ambiguity.

An appropriate Order follows.

## ORDER

AND NOW, this 16th day of March, 1993, upon consideration of the Plaintiff Roy F. Weston, Inc.'s Motion for Reconsideration of

2. To the extent that the Court noted in its original opinion that Weston's pre-contractual correspondence had recognized that there were "thixotropic solids" in the tanks is of no import. The contract is not ambiguous with respect to the pumpability of the contents and Weston's contractual duty to remove same.

the Court's Memorandum and Order Entered January 29, 1993 Granting Defendant's Motion in Limine to Preclude Certain Pre-Contract Correspondence and Discussions and the Defendant's reply in opposition thereto, IT IS HEREBY ORDERED that Plaintiff's Motion is **DENIED**.