Anthony MORGAN, et al.

v.

**HAVIR MANUFACTURING
COMPANY, et al.**

Civ. A. No. 92–5536.

United States District Court,
E.D. Pennsylvania.

Oct. 26, 1994.

George J. Badey, III, Sheller, Ludwig & Badey, Philadelphia, PA, for plaintiffs.

Donald M. Davis, Kevin S. Riechelson, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Philadelphia, PA, for H.V.R. Parts, Inc., and H.V.R. Machine Tools, and Terry P. Duggins.

Thomas P. Wagner, Michael P. Zipfel, Rawle & Henderson, Philadelphia, PA, Fran Mandel, Cobb, Raynor & Mandel, Bala Cynwyd, PA, for Kurt Mfg. Inc.

## MEMORANDUM AND ORDER

HUTTON, District Judge.

Presently before the Court are the plaintiffs' Motion for Sanctions and Renewed Motion for Partial Summary Judgment and Injunctive Relief, defendants Terry Duggins, H.V.R. Parts, Inc., and H.V.R. Machine Tools' response and Renewed Motion for Summary Judgment and defendant Kurt Manufacturing, Inc.'s Renewed Motion for Summary Judgment.

## I. FACTUAL BACKGROUND

This product liability action arises out of an accident which occurred on November 15, 1990 while plaintiff, Anthony Morgan, was operating a Press–Rite punch press. As a result of the accident, plaintiff sustained serious injuries. The press involved in Mr. Morgan's accident was manufactured by Havir Manufacturing Company ("Havir"). Havir dissolved and ceased operating in 1977.

Plaintiffs allege that defendants H.V.R. Parts, Inc., H.V.R. Manufacturing Company, and Terry Duggins ("HVR defendants") and Kurt Manufacturing, Inc., are the legal successors to Havir's Press–Rite punch press product line and thus, can be held liable under the product line exception to the general rule that a successor is not liable for the torts of the predecessor recognized by the Pennsylvania Superior Court in *Dawejko v. Jorgensen Steel Co.*, 290 Pa.Super. 15, 434 A.2d 106 (1981). The various motions for summary judgment before the Court involve the issue of whether any of the defendants is the successor of Havir's Press–Rite punch press product line.

Also before the Court is the plaintiffs' Motion for Sanctions, which asserts that the HVR defendants have not complied with this Court's July 18, 1994 Order. The Order directed defendants to fully respond to plaintiffs' Supplemental Interrogatories and Second Request for Production of Documents. The procedural history leading up to this Court's July 13, 1994 Order is as follows.

On March 4, 1994, the plaintiffs served upon the defendants, Supplemental Interrogatories and a Second Request for Production of Documents. These discovery requests were directed primarily toward discovering information pertaining to the plaintiffs' claim that the defendants are liable under a corporate successor liability theory. The defendants failed to timely respond to the plaintiffs' discovery requests. Accordingly, on April 7, 1994, the plaintiffs filed a Motion to Compel. Thereafter, on April 14, 1994, the defendants served upon the plaintiffs their answers to the outstanding discovery, in which they failed to respond substantively to many of the interrogatories and requests for production, asserting boilerplate objections that the discovery sought was either unduly burdensome, irrelevant or otherwise objectionable.

## II. DISCUSSION

### A. The Standard For Summary Judgment

The purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). When considering a motion for summary judgment, this Court shall grant such motion "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When reviewing a motion for summary judgment, this Court will resolve all reasonable doubts and inferences in favor of the nonmoving party. *Arnold*

*Pontiac—GMC, Inc. v. General Motors Corp.,* 700 F.Supp. 838, 840 (W.D.Pa.1988).

The inquiry into whether a "genuine issue" of material fact exists has been defined by the Supreme Court as whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "As to materiality, the substantive law will identify which facts are material." *Id.*

The Supreme Court articulated the allocation of burdens between a moving and nonmoving party in a motion for summary judgment in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court held that the movant had the initial burden of showing the court the absence of a genuine issue of material fact, but that this did not require the movant to support the motion with affidavits or other materials that negated the opponent's claim. *Id.* at 323, 106 S.Ct. at 2552–53. The Court also held that Rule 56(e) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions, on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)).

The Supreme Court further elaborated on the type of evidence that the nonmoving party is required to adduce in order to withstand a motion for summary judgment:

> We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving par-

ty to make the showing to which we have referred [a genuine issue of material fact]. *Id.*

### B. *Applicable Law*

■ "The laws of the several states, except where the Constitution or treaties of the United States or acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." 28 U.S.C. § 1652. The Supreme Court has held that the judicial decisions of the state courts are "laws" of the states within the meaning of the above statute. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Thus, when this court sits in diversity, it must apply the substantive law of the forum in which it is located. *Id.*

■ The federal courts are to follow the decisions of the Supreme Court of the state where the state's high court has spoken. *See Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967). In addition, when the highest court of a state has not ruled on a certain issue, "'an intermediate appellate state court ... is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Id.* (quoting *West v. American Tel. & Tel. Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183–84, 85 L.Ed. 139 (1940)).

### C. *The Product Line Exception*

Under Pennsylvania law it is a "well settled rule of corporate law [that] where one company sells or transfers all of its assets to another, the second entity does not become liable for the debts and liabilities, including torts, of the transferor." *Conway v. White Trucks, A Div. of White Motor Corp.,* 885 F.2d 90, 93 (3d Cir.1989) (citing 15 W. Fletcher, *Cyclopedia of the Law of Private Corporations,* § 7122 (Perm.Ed.1983)). Beginning in 1975, however, the Pennsylvania courts began creating several exceptions to the general rule against successor liability.[1]

---

**1.** In *Husak v. Berkel, Inc.,* 234 Pa.Super. 452, 341 A.2d 174, 176 (Pa.Super. Ct.1975), the Penn-

sylvania Superior Court recognized the following five exceptions to the non-liability rule: (1) the

In 1981, the Pennsylvania Superior Court was faced with the issue of whether to extend the successor liability doctrine beyond the five exceptions it created in *Husak* to include strict products liability. In *Dawejko v. Jorgensen Steel Co.,* 290 Pa.Super. 15, 434 A.2d 106 (Pa.Super.Ct.1981), the court held that Pennsylvania would adopt the "product line exception," which bases liability on the continued marketing by the successor of the predecessor's product. *Id.* 290 Pa.Super. 15, at 107–08, 434 A.2d 106; *see also Conway,* 885 F.2d at 93; *Olejar v. Powermatic Div. of DeVlieg–Bullard Inc.,* 808 F.Supp. 439, 441–44 (E.D.Pa.1992) (Hutton, J.).

■ When the Superior Court adopted the product line exception it embraced the reasoning of the New Jersey Supreme Court in *Ramirez v. Amsted Inds., Inc.,* 86 N.J. 332, 431 A.2d 811 (1981). The test that the *Dawejko* court adopted provides:

> [W]here one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation.

434 A.2d at 110 (citing *Ramirez,* 431 A.2d at 825). Factors to be considered when analyzing whether to apply the product line exception are: (i) whether the successor corporation advertised itself as an ongoing enterprise; (ii) whether the successor maintained the same product, name, personnel, clients, and property; (iii) whether the successor acquired the predecessor's name and good will; and (iv) whether it required the predecessor to dissolve. *Dawejko,* 434 A.2d at 111.

In *Dawejko,* the Pennsylvania Superior Court also directed courts to consider the tripartite test for application of the Product Line exception outlined by the California Supreme Court in *Ray v. Alad Corp.,* 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3 (1977). Before reviewing the *Ray* Court's test, it is important to note that this Court has made clear that the *Ray* test is only to weigh in on a court's analysis and does not set firm requirements that must be satisfied by the party moving for the application of the product line exception. *Olejar,* 808 F.Supp. at 443; *see also Dawejko,* 434 A.2d at 111. The considerations outlined by the *Ray* Court are:

> "(1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacture's risk-spreading rule, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being employed by the successor in the continued operation of the business."

The Pennsylvania Superior Court once again examined the scope of the product line exception in *Hill v. Trailmobile, Inc.,* 412 Pa.Super. 320, 603 A.2d 602 (Ct.1992). In *Hill,* the court reaffirmed Pennsylvania's commitment to the product line exception by stating "[i]n becoming one of the few states to adopt the product-line exception to successor liability, this court explained its change in philosophy as 'an attempt to implement the social policies underlying strict products liability.'" *Id.* 603 A.2d at 606; *see also Conway,* 885 F.2d at 95 ("The rationale for strict liability is that the manufacturer is in a better position to distribute the cost of insuring against ... injuries [caused by defective products] than is the defenseless victim."). Finally, the *Hill* court stated "in any particular case the court may consider *whether it is just to impose liability* on the successor corporation." *Id.* (emphasis in original).

It is clear from this review of the case law that the products line exception to non-liability for a successor corporation is the law of

---

purchaser expressly or impliedly agrees to assume such obligation; (2) the transaction amounts to a consolidation or merger; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is fraudulently entered into to escape liability; (5) the transfer was without adequate consideration and no provisions were made for creditors of the selling corporation. *Id.* 341 A.2d at 176.

Pennsylvania. The question before this Court is whether that doctrine applies to the facts of this case.

■ Upon review of the parties submissions, the Court finds that the product line exception does apply to this case and that there are no genuine issues of material fact in dispute regarding whether the HVR defendants are the successor to Havir's Press–Rite punch press product line.[2] The evidence presented would lead a reasonable juror to only one conclusion—that the HVR defendants are the successors to Havir's Press–Rite punch press product line. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

■ The threshold question of whether the HVR defendants purchased all or substantially all of Havir's manufacturing assets can only be answered in the affirmative. *Dawejko,* 434 A.2d at 110 (citing *Ramirez,* 431 A.2d at 825). The plaintiffs have proffered a Purchase Agreement between Havir and Terry Duggins dated February 16, 1977 and a Bill of Sale and Instrument of Assignment between Havir and Terry Duggins dated April 29, 1977, which both unambiguously state that Duggins is purchasing all of Havir's assets.[3] Specifically, the Purchase Agreement states in pertinent part:

WHEREAS, Seller is the owner of certain assets used in the manufacture of punch presses, and

WHEREAS, Purchaser wishes to purchase such assets on the terms and conditions set forth. . . .

IT IS HEREBY AGREED AS FOLLOWS:

1. Seller agrees to sell purchaser and Purchaser agrees to purchase from Seller, all of the assets of seller, excluding cash and accounts receivable.

In addition, the Bill of Sale and Instrument of Assignment states that the seller is selling and the buyer is buying "all and singular, all of the assets of seller, excluding cash and accounts receivable, wheresoever situated, owned by seller." Accordingly, considering the above agreements, the Court finds that the HVR defendants purchased the Press–Rite Press product line from Havir.

As to the remaining factors to be considered under *Dawejko, supra,* the Court also finds that the plaintiffs have established that there are no material issues in dispute. The plaintiffs have buttressed the evidence discussed above with the following:

(i) the deposition of William Kuban, President of Kurt Manufacturing and a former executive of Havir, in which he states that the HVR defendants purchased all of the assets of Havir and the sale included the goodwill of Havir;

(ii) the deposition of Bert Gross, the liquidating trustee of Havir, in which he states that the HVR defendants purchased the Press Rite press product line and also received Havir's customer lists;

(iii) the complaint of a lawsuit that Terry Duggins filed in Minnesota state court, which states that H.V.R. Parts, Inc., purchased "all of the assets of Havir Manufacturing Company;"

(iv) product brochures of H.V.R. Parts, Inc., which indicate that H.V.R. Parts, Inc., is holding itself out as a successor to Havir's Press–Rite punch press product line;

(v) telephone directories from the 1980s which list H.V.R. Parts, Inc., under the name Havir and a copy of the 1993–94 Minneapolis Yellow pages which list H.V.R. Parts, Inc., as the manufacture of Press–Rite Punch Presses;

(vi) several Certificates of Assumed Name, signed by Terry Duggins and filed with the Minnesota Secretary of State, which list assumed names of H.V.R.

---

**2.** Also before the Court is the unopposed Motion for Summary Judgement of Kurt Manufacturing, Inc. Perhaps realizing that there could not be two successors under the *Dawejko* test, plaintiffs have not produced any evidence that Kurt Manufacturing, Inc. was a successor to Havir's Press–Rite punch press product line. Accordingly, Kurt Manufacturing, Inc.'s motion is granted.

**3.** When a written agreement is unambiguous, interpretation of the agreement is a question of law for the Court to decide. *Weston Services v. Halliburton NUS. Env. Corp.,* 839 F.Supp. 1144 (E.D. Pa 1993) (Hutton, J.).

Parts Inc., as HAVIR, Havir Press–Rite, Havir Presses, Havir Autopress, and HAVIR America IRELAND;

The plaintiffs have not put forth credible evidence which establishes that there are any genuine issues of material fact in dispute regarding successor liability. When presented with the plaintiffs' evidence, the defendants claim that the evidence results from mistakes on the part of Terry Duggins and his employees and that the plain language of the above agreements do not mean what they say.[4] Such explanations fall well short of creating a genuine issue of material fact. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

The evidence presented establish that the HVR defendants purchased Press–Rite press product line and subsequently held themselves out as the successor to the product line. *Dawejko*, 434 A.2d at 111. Accordingly, the plaintiffs' Renewed Motion for Partial Summary Judgment and Injunctive Relief is granted in part and the defendants Terry Duggins, H.V.R. Parts, Inc., and H.V.R. Machine Tools' Renewed Motion for Summary Judgment is denied.[5]

## D. *Sanctions*

The plaintiffs also move for sanctions pursuant to Federal Rule of Civil Procedure 37 based on allegations that the defendants have failed to comply with this Court's Memorandum and Order of July 18, 1994, which ordered defendants to fully respond to plaintiffs' discovery requests. *See Morgan v. Havir Manufacturing Co.*, 1994 WL 384665 (July 18, 1994) (discussing the relevant rules and case law under Rule 37 as they apply to this case). Specifically, the plaintiffs request that the Court deem the HVR defendants as the successor to Havir. Rule 37, in pertinent part, states:

(2) **Sanctions by the Court in Which Action, is pending.** If a party or an officer, director, or managing agent of a person or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order made under subdivision (a) of this rule … the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order.

Fed.R.Civ.P. 37(b)(2).

■ Upon review of the defendants' responses to plaintiffs' discovery requests, the Court finds that the defendants have substantively supplemented their original responses and have provided plaintiffs with numerous documents that are responsive to plaintiffs' requests. Moreover, the plaintiffs have failed to point out any specific substantive deficiencies with defendants' responses. Thus, the plaintiffs' Motion for Sanctions is denied.

An appropriate Order follows.

### ORDER

AND NOW, this 26th day of October, 1994, upon consideration of the Plaintiffs' Motion for Sanctions and Renewed Motion for Partial Summary Judgment and Injunctive Relief, Defendants Terry Duggins, H.V.R. Parts, Inc., and H.V.R. Machine Tools' Renewed Motion for Summary Judgment and Defendant Kurt Manufacturing, Inc.'s Renewed Motion for Summary Judgment, IT IS HEREBY ORDERED that Plaintiffs' Motion for Sanctions and Renewed Motion for Partial Summary Judgment and Injunctive Relief is **GRANTED** in part and **DENIED** in part.

---

4. In addition, the HVR defendants vigorously assert that this Court should follow *Hack v. H.V.R. Parts, Inc.*, 742 F.Supp. 283 (W.D. Pa.1990). There, on a motion for summary judgment, the court found that H.V.R. Parts, Inc. was not the successor of Havir's Press–Rite punch press product line. Upon review of the *Hack* decision, however, the Court concludes that the plaintiff in *Hack* did not proffer evidence that is comparable to the plaintiffs in this action. Thus, the *Hack* decision shall not affect the Court's disposition of the present motions.

5. In light of the Courts finding that there are genuine issues of fact, the Court need not reach plaintiffs' unclear and abstruse request for injunctive relief based on a claim that Mr. Duggins has committed fraud.

IT IS FURTHER ORDERED that:

(1) Defendants Terry Duggins, H.V.R. Parts, Inc., and H.V.R. Machine Tools' are deemed successors to the Havir Press–Rite punch press product line in the instant case;

(2) Defendants Terry Duggins, H.V.R. Parts, Inc., and H.V.R. Machine Tools' Renewed Motion for Summary Judgment is **DENIED;** and

(3) Defendant Kurt Manufacturing, Inc.'s Renewed Motion for Summary Judgment is **GRANTED** and Final Judgment is entered in favor of Defendant Kurt Manufacturing, Inc., and against Plaintiffs.