Joseph W. **FRIES**

v.

**METROPOLITAN MANAGEMENT CORP.**

No. CIV.A.02–CV–7196.

United States District Court, E.D. Pennsylvania.

Nov. 13, 2003.

500

Steven A. Cotlar, Barry W. DeGroot, Law Offices of Steven A. Cotlar, Doylestown, PA, for Plaintiff.

Allan M. Dabrow, Beth Lincow Cole, John J. Jacko, Buchanan Ingersoll P.C., Gina M. Ameci, Jennifer L. Petrucelli, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for Defendant.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

Defendant, Metropolitan Management Corporation has filed a motion seeking the entry of judgment as a matter of law on all of the claims set forth against it in the plaintiff's complaint. For the reasons discussed below, the motion shall be granted.

### History of the Case

This case arose on December 14, 2001 when the plaintiff, Joseph Fries, was terminated from his employment as Maintenance Superintendent at the Doylestown Meadows apartment complex in Doylestown, Pennsylvania. Although Mr. Fries had been an employee of Metropolitan Management since October, 1997 when it purchased Doylestown Meadows from its prior owner, he had worked at the apartment complex for an additional two years before the property was sold. Plaintiff contends that, contrary to the defendant's assertion that it separated his employment due to willful misconduct, he was actually terminated because he engaged in protected activity in support of a claim of age discrimination made by the former property manager at Doylestown Meadows, Julia Glanzman. In so doing, Plaintiff further avers, Defendant retaliated against him and subjected him to a hostile work environment in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et. seq. and the Pennsylvania Human Relations Act, 43 P.S. § 951, et. seq.

### Standards Governing Summary Judgment Motions

It is recognized that the underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Under Fed.R.Civ.P. 56(c), summary judgment is properly rendered:

"...if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

Stated more succinctly, summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–

32, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *See Also: Medical Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir.1999).

In deciding a motion for summary judgment, all facts must be viewed and all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Oritani Savings & Loan Association v. Fidelity & Deposit Company of Maryland*, 989 F.2d 635, 638 (3rd Cir.1993); *Troy Chemical Corp. v. Teamsters Union Local No. 408*, 37 F.3d 123, 125–126 (3rd Cir.1994); *Arnold Pontiac–GMC, Inc. v. General Motors Corp.*, 700 F.Supp. 838, 840 (W.D.Pa.1988). An issue of material fact is said to be genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In the face of a defendant's properly supported motion for summary judgment, a plaintiff cannot survive summary judgment with speculation or by resting on the allegations in the pleadings, but rather must present competent evidence from which a jury could reasonably find in its favor. *Id.; Ridgewood Board of Education v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir.1999); *Bailey v. Principi*, Civ. A. No. 02–942, 2003 WL 22245100, *2 (E.D.Pa. August 20, 2003).

### *Discussion*

As noted, Plaintiff has brought suit under for retaliation under both the federal Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Relations Act ("PHRA"). The ADEA states, in relevant part:

"It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."

29 U.S.C. § 623(d).

The PHRA similarly states in pertinent part:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or in the case of a fraternal corporation or association, unless based upon membership in such association or corporation, or except where based upon applicable security regulations established by the United States or the Commonwealth of Pennsylvania:

. . . . . . . . . . . . . . . . . . . . . . . .

(d) For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.

43 P.S. § 955(d). Because the language of the PHRA is substantially similar to the anti-retaliation provision of the ADEA, the Third Circuit has held that the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently. *Fogleman v. Mercy Hospital, Inc.*, 283 F.3d 561, 567 (3d Cir.2002), citing

*Krouse v. American Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir.1997) and *Dici v. Commonwealth of Pennsylvania,* 91 F.3d 542, 552 (3d Cir.1996).

■ The procedural framework in ADEA retaliation cases also follows that of Title VII disparate treatment cases as set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Barber v. CSX Distribution Services,* 68 F.3d 694, 701 (3d Cir.1995).[1] Thus, to establish a *prima facie* case of retaliation, a plaintiff must show: (1) that he engaged in protected conduct; (2) that he was subject to an adverse employment action subsequent to such activity; and (3) that a causal link exists between the protected activity and the adverse action. *Fogleman* and *Barber,* both *supra.* See Also: *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 279 (3d Cir.2000). The plaintiff bears the burden of showing that his protected activity was the determinative or motivating reason for the employer's alleged retaliatory action. *Bailey v. Principi,* Civ. A. No. 02–942, 2003 WL 22245100, *7 (E.D.Pa. August 20, 2003), citing *Watson v. Southeastern Pennsylvania Transportation Authority,* 207 F.3d 207, 221 (3d Cir.2000), *cert. denied,* 531 U.S. 1147, 121 S.Ct. 1086, 148 L.Ed.2d 961 (2001). The burden then shifts to the defendant to offer a legitimate, non-retaliatory reason for the adverse action. *Id.* Because the ultimate burden must always rest with the plaintiff, the defendant is not required to show by a preponderance of the evidence that it was, in fact, motivated by this particular reason. Rather the defendant must merely present a reason for the action which, if believed, would be legitimate and non-discriminatory. *McKenna v. City of Philadelphia,* Civ. A. No. 98–5835, 2003 WL 171373, at *7 (E.D.Pa. Jan. 17, 2003). Should the defendant do so, the plaintiff must then present evidence which shows that the proffered explanation is unworthy of credence or that the real motivation was more likely than not, discriminatory. *Reeves v. Sanderson Plumbing Products,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

■ A court must consider several factors when determining whether the necessary causal link has been established including the timing of the employer's act as well as circumstantial evidence of discriminatory intent. *Id.* Depending upon the facts of the case, a causal connection may be inferred from the temporal proximity between the protected activity and the alleged retaliatory conduct alone, although the timing between the two must be very close. *See, Farrell,* 206 F.3d at 279; *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1302 (3d Cir.1997); *Bailey, supra.* Where a pattern of antagonism follows the protected action, an inference of improper motive may also, in certain cir-

---

1. Generally, to proceed under the *McDonnell Douglas* framework, an ADEA plaintiff must first show that (1) he is over 40, (2) he is qualified for the position in question, (3) he suffered an adverse employment decision, and (4) he was replaced by a sufficiently younger person to create an inference of age discrimination. *Elwell v. PP & L,* 47 Fed. Appx. 183, 2002 WL 31160109 (3d Cir.2002), quoting *Sempier v. Johnson & Higgins,* 45 F.3d 724, 728 (3d Cir.1995). If the plaintiff is able to establish a prima facie case, a presumption of age discrimination arises which the employer must rebut by providing a legitimate non-discriminatory reason for the adverse employment action. *Id.* As evidence of discrimination, a plaintiff may show that other, younger employees were retained or otherwise treated more favorably and that he or she is similarly situated in terms of qualifications and position to the employees retained. *See, e.g., Showalter v. University of Pittsburgh Medical Center,* 190 F.3d 231, 236 (3d Cir.1999); *Maidenbaum v. Bally's Park Place, Inc.,* 870 F.Supp. 1254, 1259 (1994) *aff'd w/o opinion,* 67 F.3d 291 (3d Cir.1995).

cumstances, be made. *See, e.g., Kachmar v. SunGard Data Systems, Inc.,* 109 F.3d 173, 178 (3d Cir.1997).

In this case, Plaintiff contends that the defendant fired him in retaliation for his informing the company owner, Scott Fagan, that the company's Vice President of Property Management, had told him that he "wanted to fire Julia Glanzman and replace her with a young chippie with big tits," for signing an affidavit to that effect and for agreeing to be a witness for Ms. Glanzman and testifying to this statement at her EEOC hearing. Here, there is ample record evidence that Mr. Fries signed an affidavit, agreed to be a witness on Ms. Glanzman's behalf before the EEOC and that his employment was terminated. Given that signing an affidavit and agreeing to be a witness in an EEOC proceeding can certainly constitute protected activity and termination constitutes an adverse employment action, we find that the plaintiff has sufficiently demonstrated the first two elements of a *prima facie* case.

Turning next to the final element, that of causal connection, we find that there is a close temporal proximity between the date on which Ms. Glanzman filed her EEOC complaint (November 5, 2001) identifying Plaintiff as a witness and the dates on which a copy of that charge was served upon the defendant (December 10, 2001) and on which Plaintiff's employment was terminated (December 14, 2001). Although there is nothing else on this record to demonstrate that a causal link exists between the two, we do find that this temporal proximity (4 days) is unusually suggestive and could give rise to an inference of retaliatory motive.

█ These facts notwithstanding however, Mr. Fries' deposition testimony further reveals that he knew that the real reason for his termination was because he refused to give the defendant company a letter of apology for performing work on an apartment owned privately by Ms. Glanzman during his regular work hours at Doylestown Meadows and that he knew that the real reason for Ms. Glanzman's termination was because the defendant believed that she intended to steal property (i.e. a dishwasher) from it, her improper acceptance of collect telephone calls on the office telephone, her failure to respond when she was paged, allowing her granddaughter to use the office computer and for directing Doylestown Meadows' maintenance personnel to perform work on her personal properties. (Exhibit "G", 63–64, 98–111, 182–183, 205). Recently, the Supreme Court has held that opposing the conduct of the defendants cannot be protected activity if no reasonable person could have believed that the actions taken by the defendant about which the plaintiff complained violated the law. *Clark County School District v. Breeden,* 532 U.S. 268, 271, 121 S.Ct. 1508, 1510, 149 L.Ed.2d 509 (2001); *McKenna v. City of Philadelphia, supra.; Zappan v. Pennsylvania Board of Probation and Parole,* Civ. A. No. 00–1409, 2002 WL 32174230, *7–8 (E.D.Pa. Nov. 25, 2002). Here the conduct that the plaintiff contends was discriminatory was Ms. Glanzman's termination. He claims his protected activity was his agreement to testify in support of her claim that she was terminated because of her age. In so far as the plaintiff himself has admitted that he knew that Ms. Glanzman was terminated, not because of her age, but because the company believed she was guilty of misconduct and violation of company policies and procedures, we do not believe that he has made out a *prima facie* case of retaliation and summary judgment shall be

granted to the defendant on this claim.[2]

■■ Mr. Fries also avers that the defendant created a hostile working environment for him in violation of the ADEA and PHRA. Although it as yet unsettled whether the Third Circuit recognizes hostile environment claims in ADEA cases, it appears that to the extent that it does, there are five elements to such a claim: (1) intentional discrimination because of age which is (2) pervasive and regular, (3) has detrimental effects that (4) would be suffered by a reasonable person of the same age in the same position, and (5) that respondeat superior liability exists. *Jackson v. R.I. Williams & Associates, Inc.,* Civ. A. No. 98–1741, 1998 WL 316090 (E.D.Pa. June 8, 1998); *Tumolo v. Triangle Pacific Corp.,* 46 F.Supp.2d 410, 412 (E.D.Pa.1999). Generally speaking, to be successful in such hostile environment actions, a plaintiff must demonstrate that the workplace is "permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993), quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986).

Plaintiff contends that the repeated requests by Regional Property Manager Trish Kotsay to write a statement about performing work on Julia Glanzman's property, Ms. Kotsay's statement that he had better write such a statement to save his job and sending him home from work without pay on one day to "think about his future," the comment by company owner Scott Fagan that if he was not going to cooperate with the company then he would be siding with Ms. Glanzman, and Glenn Fagan's exclamation to him that he had better swear on his children's lives that it was not true that Fagan had made the young chippie remark about Ms. Glanzman all constitute evidence of hostile environment. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, p. 12). Although it may have been annoying and unpleasant to have heard the remarks referenced above, we cannot find that they were such as to have permeated Mr. Fries' workplace with "discriminatory intimidation, ridicule and insult" or that they were so severe and pervasive as to have altered the conditions of his employment and created an abusive environment in which to work. Additionally, by Plaintiff's own admission, he has suffered no detrimental effects as a result of these statements. Accordingly, we shall grant the motion for the entry of judgment in Defendant's favor on Plaintiff's hostile environment claim as well. An order follows.

### ORDER

AND NOW, this 13th day of November, 2003, upon consideration of the Motion for Summary Judgment of Defendant, Metropolitan Management Corporation and the Plaintiff's Response thereto, it is hereby ORDERED that the Motion is GRANTED and Judgment as a matter of law is en-

---

2. Furthermore, even giving the plaintiff the benefit of all possible doubt that he has established a *prima facie* case, the record is clear that he has produced absolutely no evidence that the reason given by the defendant for his termination (*i.e.,* insubordination for performing work on Ms. Glanzman's property during normal, working hours and then refusing to provide a letter of apology for doing so and for bringing a subordinate employee with him to do this work) was a pretext for discrimination. It is on this basis, as well, that we grant the defendant's motion for summary judgment on plaintiff's retaliation claim.

tered in favor of the Defendant and against the Plaintiff in no amount.