Dominic CENTRELLA

v.

Frederic C. BARTH, individually and as Director of Domestic Relations Section, Court of Common Pleas, Berks County; the Board of Judges, Court of Common Pleas, Berks County; Donald W. Bagenstose, individually and as Chairman of the Board of County Commissioners, Berks County; Anthony J. Carabello and Vernon K. Shaffer, individually and as Commissioners, Berks County; and County of Berks.

Civ. A. No. 83–4292.

United States District Court, E.D. Pennsylvania.

April 8, 1986.

Frank P. Murphy, Norristown, Pa., for plaintiff.

Stephen D. Lieberman, Solicitor, Berks County, Reading, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

On March 3, 1982, plaintiff Dominic Centrella was hired as an enforcement officer for the Domestic Relations Section of the Court of Common Pleas of Berks County. His appointment was initially for a three-month probationary period. He expected to receive a permanent appointment at the end of that time. Instead, Centrella's probation was extended for three more months and his duties were modified. In September, 1982, Centrella was notified that he was not eligible for a permanent appointment and was discharged.

Alleging that the termination of his employment violated various federal constitutional rights and state laws, Centrella filed suit against Frederic Barth, his immediate supervisor, the Board of Judges of the Court of Common Pleas of Berks County, the County Commissioners in their official and individual capacities, and the County of Berks. All defendants have moved to dismiss the complaint pursuant to Fed.R. Civ.P. 12(b)(6). At plaintiff's invitation, we have considered certain documents outside of the pleadings in reaching our decision.

(Exhibits A–E to Plaintiff's Memorandum in Opposition to Defendant Board of Judges' Motion to Dismiss, Doc. # 7). Accordingly, we will treat the outstanding motions as motions for summary judgment under Fed.R.Civ.P. 56(c).

Plaintiff's federal claims are based upon the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985, 1986. He alleges violations of First, Fifth and Fourteenth Amendment rights. Pendent state claims include breach of contract, wrongful discharge, intentional infliction of emotional distress and negligent infliction of emotional distress. The gravamen of plaintiff's complaint is that he was discharged because he refused to violate state law and both state and federal case-law in connection with the duties he was performing as an enforcement officer. He also alleges "retaliation" for complaining about the allegedly illegal procedures he was instructed to follow.

At the time of his employment by Berks County, Centrella had recently graduated from the Delaware School of Law of Widener University and was awaiting admission to the bar.[1] On the basis of plaintiff's legal interpretations of the Pennsylvania Rules of Civil Procedure and the applicability of various federal and state constitutional provisions, he concluded that his duties as defined by defendant Barth, under certain circumstances and at various times, required him to violate the law. During his six months of employment, plaintiff communicated his legal conclusions to the defendants, both informally and through the employee grievance procedures.

Defendant Barth responded to plaintiff's concerns by giving him other duties within the Domestic Relations Section. Barth also concluded, at the end of the three-month probationary period, that plaintiff was not satisfactorily performing his duties and on that basis extended his probation for another three months. He indicated at that time that plaintiff would be dismissed if he did not show substantial improvement. (Exhibit A to Doc. # 7). By September, 1982, Barth concluded that plaintiff had not improved sufficiently and denied him a permanent appointment. The other defendants refused to reinstate Centrella upon his request that they do so.

The legal standards applicable in deciding a motion to dismiss are both long-standing and well-known. A case will not be dismissed unless plaintiff can prove no set of facts which would entitle him to relief, *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), and the Court will accept as true the well-pleaded allegations of plaintiff's complaint. *Scheuer v. Rhoades*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Summary judgment standards require that there be no genuine issue of fact in dispute and that the moving party be entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Both forms of pre-trial termination require that the non-moving party be given the benefit of all reasonable inferences from undisputed facts. Thus, defendants may generally prevail only if plaintiff's version of the facts reveals that they are entitled to judgment.

There are, however, some limitations placed upon these general principles. In this Circuit, plaintiffs are required to be specific in their allegations of unconstitutional conduct in the context of suits based upon the Civil Rights Acts. *Rotolo v. Borough of Charleroi*, 532 F.2d 920 (3d Cir. 1976). Moreover, the Court is not required to accept as true conclusions, deductions or opinions simply because they are alleged in the complaint. Only factual averments are entitled to the presumption of truthfulness. *See*, 2A *Moore's Federal Practice*, 12–64 (2d Ed.1985).

It is in light of these principles that we consider plaintiff's amended complaint. The record upon which we base our deci-

---

1. In ¶ 17 of plaintiff's amended complaint he alleges that he "was soon to be admitted to the Pennsylvania Bar Association". We assume that he was actually awaiting admission to practice before the Supreme Court of Pennsylvania, not to a voluntary professional organization. Membership in the PBA cannot, of course, be equated to a license to practice law in the Commonwealth of Pennsylvania.

sion consists of the amended complaint and the exhibits attached to plaintiff's original brief in response to a motion to dismiss.[2] We accept as true the allegations of the complaint insofar as they are specific, factual and not contradicted by plaintiff's exhibits.

■■■ Turning first to Centrella's federal claims, it is apparent that those based upon §§ 1985 and 1986 must be dismissed. Initially, we note that there are no allegations of class-based discrimination in the complaint. Second, even if we were to consider the arguments raised in plaintiff's Brief in Opposition to the Board of Judges' Motion to Dismiss the Amended Complaint (Doc. # 14) to the effect that political discrimination is the basis for this claim, it still must fail. This Circuit's consistent position has been that § 1985 is available to redress only those claims arising out of a conspiracy which results from defendants' class-based animus when the composition of the class is determined by an immutable characteristic, such as race. *See, e.g., Dudosh v. City of Allentown, et al.,* 629 F.Supp. 849 (E.D.Pa.1985), and cases cited therein.

Finally, were we to accept plaintiff's position that a conspiracy based upon political discrimination is a proper claim under § 1985, or agree to consider the issue, this is not the proper case in which to allow that claim to proceed. Plaintiff asks the Court to consider him a member of a class which includes obligors subject to support enforcement orders issued by the Court, whose rights, privileges and immunities he allegedly sought to protect while an en-

forcement officer of the Domestic Relations Section. He has, however, failed to specify the nature of the politically-motivated discriminatory animus purportedly harbored by the defendants against this class. More important, he is patently not a member of the class. Nowhere in the complaint, or otherwise, does plaintiff contend that he was at any time an *obligor whose rights were abridged.* The most he can claim is that he was a collateral victim of the unidentified conspiracy against obligors in which the defendants allegedly participated. Moreover, the allegations of conspiracy themselves are neither specific nor factual. They are conclusions of law based entirely upon plaintiff's own interpretations of statutory and case law. Because we can find no basis for plaintiff's § 1985 claim, his § 1986 claim must be dismissed as well. *Brawer v. Horowitz,* 535 F.2d 830 (3d Cir.1976).

Next, we examine plaintiff's § 1983 claims, considering first the defendant Board of Judges' contention that it is not a suable entity,[3] as well as defendants' County of Berks and County Commissioners argument that plaintiff seeks to hold them liable on the theory of *respondeat superior.*

Under *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a local government may be held liable for § 1983 violations only in limited circumstances when the plaintiff complains about a municipal policy that is not itself unconstitutional. *City of Oklahoma v. Tuttle,* —— U.S. ——, 105 S.Ct. 2427, 85 L.Ed.2d 791

**2.** We are here considering defendants' motions to dismiss plaintiff's amended complaint. The original complaint was filed *pro se* and was followed by defendants' motions to dismiss. Before the Court ruled on those motions, plaintiff's newly acquired counsel requested that no action be taken until he had the opportunity to file an amended complaint. After he did so, defendants again responded with motions to dismiss. In plaintiff's brief in opposition to those motions, he incorporates by reference the exhibits he had attached to his brief in response to the earlier motions to dismiss.

**3.** We assume that the Board of Judges' motion to dismiss is, in reality, based upon the same theory as that of the County defendants. The cases cited to support the Board's contention that it is not a proper party even if considered in its capacity as an administrative body rather than in its judicial capacities, are inapposite since they pre-date *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Board does not appear to contest plaintiff's allegation that it has administrative functions with respect to the Domestic Relations Section of the Court of Common Pleas of Berks County.

(1985; plurality opinion). Here, it is uncertain which policy pursued by the Board of Judges and the County Commissioners is being questioned by the plaintiff. Ordinarily in such a situation, the Court would consider allowing the plaintiff an opportunity to amend the complaint in order to clarify or identify the precise issue. In this case amendment is unnecessary because it is clear that plaintiff could be alluding to only two "policies", neither of which would support § 1983 claims against the municipal defendants.

 If Centrella means to allege, as seems most likely, that the Board, the Commissioners and the County are liable for their failure to reinstate him after he was terminated by Barth, his complaint fails because such averments are clearly based upon *respondeat superior*. If Centrella means to allege that the municipal defendants were pursuing an independent and unconstitutional policy by acquiescing or participating in Barth's personnel decision, his complaint is deficient because he has neither identified such a policy nor alleged that the Board and the County defendants participated in the decision not to offer him a permanent position.

██ On the other hand, if plaintiff means to suggest and allege that the Board and the County defendants are liable to him for pursuing policies with respect to obligors that he considers illegal and unconstitutional, Centrella faces two insurmountable obstacles. First, he seeks to assert the claims of third parties who are not before this Court and whose rights would not be affected by the relief requested. Thus, the plaintiff lacks standing to pursue those claims. *Singleton v. Wullf,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976).

 Second, if this Court were to accept plaintiff's legal conclusions or allow him to attempt to show that they are correct, *i.e.*, that the procedures to which he alludes in his amended complaint are con-

trary to law, we would violate sound principles of comity and federalism. A federal court is obliged to refrain from examining the constitutionality of state judicial proceedings until the state courts have had the opportunity to consider issues related thereto, even where the plaintiff's own rights are directly affected. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), *Middlesex Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). Here, we are presented with a much stronger case for abstention. The plaintiff would have this Court examine unspecified policies and procedures allegedly adopted or followed by the Board of Judges and the County Commissioners to enforce orders of support to determine whether plaintiff is correct in his assertion that such procedures violate Pennsylvania or federal law. Plaintiff asks this Court to inject itself into this state matter in a case which concerns only the propriety of a personnel decision. No one who was actually subjected to the allegedly improper actions of these defendants has a complaint before this Court. In this situation, the usual concerns related to third-party standing are reinforced by the need to avoid an imprudent inquiry into the conduct of these defendants. Thus, we decline to consider plaintiff's arguments or allow him to develop a record with respect to those claims related to defendants' purportedly illegal support enforcement practices.

Moving on to consider plaintiff's § 1983 claims against defendant Barth, we reiterate that those allegations of the complaint which are conclusions of law or which would require that we go beyond the proper scope of our jurisdiction will not be considered for the same reasons that we previously declined to consider them. Accordingly, we now examine plaintiff's allegations that he was terminated by Barth in retaliation for communicating his views to Barth, to co-workers and to the other defendants, and for filing grievances.[4]

---

4. We note, in passing, that plaintiff's allegation that he "... communicat[ed] ... to the defend-

ant Frederic C. Barth his *professional and legal opinion* that the enforcement procedure being

The Court of Appeals for the Third Circuit has recently restated " 'the three-step process ... required in examining a public employee's claim of retaliation for engaging in protected activity' ". *Johnson v. Lincoln University*, 776 F.2d 443, 450 (3d Cir.1985), quoting *Czurlanis v. Albanese*, 721 F.2d 98, 103 (3d Cir.1983). First, plaintiff must show that he engaged in a protected activity. In making that decision, the Court must weigh " 'the interests of the [employee] as a citizen, commenting upon matters of public concern' " against " 'the interests of the employer, in promoting the efficiency of the public services it performs through its employees' ". *Id.*, quoting *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). If the Court determines that plaintiff was engaged in a protected activity, it must then decide whether it was a substantial factor in the decision to terminate. Finally, defendant must be given the opportunity to demonstrate that the same course would have been followed in the absence of the protected activity.

In this case, we have no difficulty concluding that plaintiff did not engage in a protected activity under the *Pickering* balancing test. We have already declined to credit or examine his conclusions as to the legality of the procedures he was instructed to follow. Barth, as the employer, had the right to expect plaintiff to fulfill his responsibilities as directed. Barth thought that plaintiff's expression of his concerns, especially to fellow officers, did not contribute to the reliable operation of the enforcement functions of the Domestic Relations Section. (Exhibit B to Doc. # 7). Barth's comments on plaintiff's evaluation forms and in letters to the plaintiff clearly indicate that Centrella's comments and refusal to perform certain duties as directed disrupted the functions of the office and necessitated a modification of his duties. (Exhibits A–D to Doc. # 7). Although Centrella may sincerely believe that he was correct in acting as he did and in speaking out, the fact remains that he was hired as an enforcement officer, not as the solicitor for the Domestic Relations Section and not for the purpose of offering unsolicited advice. If he disagreed with the operations of the office because his interpretation of the law did not accord with that of the attorney whose function it was to advise Barth, he should have discussed his concerns with that attorney, as Barth invited him to do. Instead, he chose to promote his own interpretation of the law within the Domestic Relations Section. Centrella's actions cannot be considered public commentary on matters of social or political concern. He was engaged in a philosophical dispute with his superiors. Thus, we conclude, under *Pickering*, that he was speaking as an employee upon matters of his own personal concerns. It is precisely in these circumstances that the Supreme Court has held that the federal courts are not an appropriate forum for reviewing the personal decisions of a public agency.

employed by the Domestic Relations Section of the Court of Common Pleas of Berks County was unlawful, illegal, and could possibly subject the enforcement officials and each of the defendants named herein to both civil and criminal liability", (Amended Complaint, ¶ 24; emphasis added), places Centrella in the awkward position of attempting to base a claim upon his own arguably unlawful conduct. To the extent that he offered legal advice and opinions and sought to induce defendants to rely thereon, he may have violated 42 Pa.Cons.Stat.Ann. § 2524, which prohibits the unauthorized practice of law. If a violation at all, it was technical only, since Centrella had apparently fulfilled the requirements for admission to the bar. Nevertheless, he was not yet licensed to practice law when the events set forth in the amended complaint transpired. This fact alone makes it unreasonable for plaintiff to have expected Barth to accept and credit his legal opinions and advice in preference to those of the attorney for the Domestic Relations Section. It also provides still another basis for the Court's decision not to examine Centrella's legal conclusions.

Because we have declined to consider any claims arising from plaintiff's interpretation of the law governing the enforcement of support orders, his averments based upon the Fifth Amendment privilege against self-incrimination, contained in ¶¶ 24 and 27 of the amended complaint, need not be addressed in any more detail.

 Plaintiff's Fourteenth Amendment due process claims [5] also lack substance. In determining whether plaintiff was denied due process of law in connection with the termination of his employment, we must first consider whether he had a property interest in that employment. Stated another way, did Centrella have a legitimate claim of entitlement to his position as an enforcement officer? *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), *Stana v. School District of the City of Pittsburgh,* 775 F.2d 122 (3d Cir.1985). Plaintiff's conclusory averments that he was to become a permanent employee after a three-month probationary period and that he had satisfactorily performed his duties during that period (Amended Complaint ¶¶ 19 and 55), are not entitled to a presumption of truth and are contradicted by the exhibits submitted by the plaintiff.

Centrella was hired as a probationary employee for a period of three months only. The evaluation sheets submitted as exhibits clearly indicate that defendant Barth retained the discretion not to offer such an employee a full-time position at the end of the probationary period. (*See,* Exhibits A and D to Doc. # 7). Any property interest plaintiff may have possessed was for the initial three-month period of employment only. Contrary to his assertion, the three-month extension of probation that Centrella received in June, 1982, was a benefit that the employer was not obligated to extend rather than a detriment. Even if the rules and regulations governing his employment did not provide for that procedure, as plaintiff alleges, he can show no injury as a result.

 Similarly, Centrella's allegations that his liberty interest in his good name was impaired by the reasons given for his termination are unsupportable. The letters and comments, upon which he seeks to base this claim, do not impugn his integrity or foreclose other employment opportunities. Instead, they demonstrate that Barth held Centrella in high personal esteem notwithstanding his opinion that Centrella was not suited to the job of an enforcement officer. (*See,* Exhibits A, C and E to Doc. # 7). In fact, in the initial evaluation form, Barth expressed the opinion that Centrella would make a better attorney than enforcement officer, and suggests that Centrella's talents would be better utilized in that capacity, (Exhibit A to Doc. # 7), thus endorsing him for an arguably better position. Finally, the fact of discharge and the reasons given for it, even if false or mistaken, do not implicate a liberty interest without publication. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Although Barth's comments became part of Centrella's employment history, there is no allegation of wider dissemination.

 Even if Centrella were able to demonstrate by means of other documents or testimony not available on this record that he possessed a more substantial property or liberty interest in continued employment, our next task would be to determine what process was due. Notice and an opportunity to be heard are the essential elements of the right to due process, *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), but the Fourteenth Amendment does not mandate the specific form or forum in which those elements are to be afforded. It is apparent that plaintiff had notice by May of 1982, that his superior was not pleased with his job performance. (Exhibit B to Doc. # 7). The May, 1982, letter from Barth to Centrella also refers to conversations between them to the same effect. Thus, Centrella can hardly claim that he was surprised by the evaluation he received in June, 1982, at the end of his first three-month probationary period, indicating that his work was unsatisfactory and detailing those areas of

---

5. Plaintiff's amended complaint alleges that his termination was in violation of the substantive due process provisions of the Fourteenth Amendment as well as its procedural due process component. Since the Court has already determined, in the context of plaintiff's First Amendment claims, that the state had a legitimate interest in terminating plaintiff's employment, we need not consider his substantive due process claims in any more detail.

his performance that he needed to improve. That evaluation also explicitly indicated that his permanent appointment was in jeopardy. Moreover, the form he received provided a space for employee comments. Plaintiff makes no allegation that he was not permitted to supply a written justification for his performance in response to the generally negative evaluation he had received.

It is apparent that plaintiff believes that he should have been given the opportunity to argue his legal theories before the Board of Judges and the County Commissioners in addition to presenting a defense of his job performance to them. It is also apparent, however, that Centrella had ample notice of his impending loss of employment and ample opportunity to be heard, albeit not in the form and forum he may have desired. Thus, we conclude that plaintiff received all the process due him.

Having now concluded that all of plaintiff's federal claims are without merit, we decline to retain jurisdiction over his pendent state claims. Consequently, the Court will enter judgment for all defendants on the federal claims and dismiss the pendent claims.