**Julia Ann GLANZMAN**

v.

**METROPOLITAN MANAGEMENT CORPORATION**

No. CIV.A.02–CV–7195.

United States District Court, E.D. Pennsylvania.

Nov. 5, 2003.

Steven A. Cotlar, Barry W. DeGroot, Law Offices of Steven A. Cotlar, Doylestown, for Plaintiff.

Allan M. Dabrow, Beth Lincow Cole, John J. Jacko, Buchanan Ingersoll P.C., Philadelphia, Gina M. Ameci, Jennifer L. Petrucelli, Schnader, Harrison, Segal & Lewis, Philadelphia, for Defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This employment discrimination case is now before the Court for resolution of the Defendant's motion for summary judgment. For the reasons which follow, the motion is granted.

### Factual Background

By this lawsuit, Plaintiff Julia Glanzman alleges that she was terminated from her position as the property manager at the Doylestown Meadows apartment complex in Doylestown, Pennsylvania on October 2, 2001 because of her age. At the time she was separated from her employment, Ms. Glanzman was 64 years old and had worked for Metropolitan Management Corp. at Doylestown Meadows since October 7, 1997, when the defendant corporation purchased the complex, previously known as Century House, from its prior owner. Up until that time, Plaintiff had been working as the property manager for Century House for the past eleven years.

For its part, the defendant disputes that Ms. Glanzman was terminated[1] because of her age, arguing instead that she was terminated because of poor job performance and because she had violated company policies on numerous past occasions, and be-

cause Defendant reasonably believed that she was trying to steal a dishwasher.

### Standards Governing Summary Judgment Motions

In deciding a motion for summary judgment under Fed.R.Civ.P. 56(c), a court must determine "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Medical Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir.1999) (internal citation omitted). Indeed, the rule itself provides that summary judgment is properly rendered:

> "...if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

Stated more succinctly, summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–32, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In deciding a motion for summary judgment, all facts must be viewed and all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89

---

1. Indeed, Metropolitan Management disputes that it terminated the plaintiff at all. Instead, Defendant contends that Ms. Glanzman resigned her position when she walked out of a meeting with Glenn Fagan and handed him her keys. However, for purposes of this motion only, the defendant has agreed that it discharged Plaintiff from her position. (See, Metropolitan Management Corporation's Motion for Summary Judgment, p. 2, fn.1).

L.Ed.2d 538 (1986); *Oritani Savings & Loan Association v. Fidelity & Deposit Company of Maryland,* 989 F.2d 635, 638 (3rd Cir.1993); *Troy Chemical Corp. v. Teamsters Union Local No. 408,* 37 F.3d 123, 125–126 (3rd Cir.1994); *Arnold Pontiac–GMC, Inc. v. General Motors Corp.,* 700 F.Supp. 838, 840 (W.D.Pa.1988). An issue of material fact is said to be genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In *Celotex Corp. v. Catrett, supra,* the Supreme Court articulated the allocation of burdens between a moving and nonmoving party in a motion for summary judgment. Specifically the Court in that case held that the movant had the initial burden of showing the court the absence of a genuine issue of material fact, but that this did not require the movant to support the motion with affidavits or other materials that negated the opponent's claim. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The Court also held that Rule 56(e) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)). This does not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose its own witnesses. Rather, Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c),except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the required showing that a genuine issue of material fact exists. *Id.* See Also, *Morgan v. Havir Manufacturing Co.,* 887 F.Supp. 759 (E.D.Pa.1994); *McGrath v. City of Philadelphia,* 864 F.Supp. 466, 472–473 (E.D.Pa.1994).

### *Discussion*

Plaintiff's complaint is predicated on the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et. seq.* ("ADEA"), and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et. seq.* ("PHRA"), in that she contends that the defendant unlawfully terminated, harassed and retaliated against her in violation of those laws. Specifically, the ADEA provides, in relevant part:

**(a) Employer practices**

It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms and conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee because of such individual's age; or

(3) to reduce the wage rate of any employee in order to comply with this chapter.

. . . . . . . . . . . . . . . . . .

**(d) Opposition to unlawful practices; participation in investigations, proceedings or litigation**

It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate

against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(a), (d).

The PHRA, in turn, similarly reads in pertinent part:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or in the case of a fraternal corporation or association, unless based upon membership in such association or corporation, or except where based upon applicable security regulations established by the United States or the Commonwealth of Pennsylvania:

(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required. The provision of this paragraph shall not apply, to (1) oper-

ation of the terms or conditions of any bona fide retirement or pension plan which have the effect of a minimum service requirement, (2) operation of the terms or conditions of any bona fide group or employee insurance plan, (3) age limitations placed upon entry into bona fide apprenticeship programs of two years or more approved by the State Apprenticeship and Training Council of the Department of Labor and Industry . . . Notwithstanding any provision of this clause, it shall not be an unlawful employment practice for a religious corporation or association to hire or employ on the basis of sex in those certain instances where sex is a bona fide occupational qualification because of the religious beliefs, practices, or observances of the corporation, or association.

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

(d) For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.

43 P.S. § 955(a), (d). Under 29 U.S.C. § 631 and 43 P.S. § 954(h), these prohibitions apply only if an individual is age 40 or older. The same legal standards and analyses are applicable to claims under both the ADEA and the PHRA and hence it is not uncommon to address such claims collectively. *See, e.g., Bailey v. Storlazzi,* 729 A.2d 1206 (Pa.Super.1999); *Zekavat v. Philadelphia College of Osteopathic Medicine,* Civ. A. No. 95–3684, 1997 U.S. Dist. LEXIS 3802 (E.D.Pa. March 21, 1997); *Butler v. Elwyn Institute,* 765 F.Supp. 243 (E.D.Pa.1991).

■ To prevail on an age-based termination claim, a plaintiff must show that his or her age "actually motivated" and "had a determinative influence on" the employer's decision to fire him or her. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 141, 120 S.Ct. 2097, 2105, 147 L.Ed.2d 105 (2000), quoting *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). This can be done either through the production of direct evidence of discrimination that meets the requirements of Justice O'Connor's controlling opinion in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (where the employment action was allegedly motivated by a combination of legitimate and illegitimate, *i.e.,* "mixed" motives) or through the production of indirect or circumstantial evidence of discrimination that satisfies the familiar three-step framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *McNulty v. Citadel Broadcasting Company,* 58 Fed.Appx. 556 (3d Cir.2003).

■ Under *Price Waterhouse,* when an ADEA plaintiff alleging unlawful termination presents "direct evidence" that his age was a substantial factor in the decision to fire him, the burden of persuasion on the issue of causation shifts, and the employer must prove that it would have fired the plaintiff even if it had not considered his age. *Fakete v. Aetna, Inc.,* 308 F.3d 335, 337 (3d Cir.2002). "Direct evidence" means evidence sufficient to allow the jury to find that the decision makers placed substantial negative reliance on the plaintiff's age in reaching their decision. *Fakete,* 308 F.3d at 338, quoting *Connors v. Chrysler Financial Corp.,* 160 F.3d 971, 976 (3d Cir.1998) (quoting *Price Waterhouse,* 490 U.S. at 229, 109 S.Ct. 1775). Such evidence "leads not only to a ready logical inference of bias, but also to a

rational presumption that the person expressing bias acted on it" when he made the challenged employment decision. *Id.,* quoting *Starceski v. Westinghouse Electric Corp.,* 54 F.3d 1089, 1097 (3d Cir.1995). In other words, the evidence must reveal a sufficient discriminatory animus making it unnecessary to rely on any presumption from the prima facie case to shift the burden of production. *Anderson v. Consolidated Rail Corp.,* 297 F.3d 242, 248 (3d Cir.2002), citing *Connors, supra.*

■ To proceed under the *McDonnell Douglas* framework, a plaintiff must first show that (1) she is over 40, (2) she is qualified for the position in question, (3) she suffered an adverse employment decision, and (4) she was replaced by a sufficiently younger person to create an inference of age discrimination. *Elwell v. PP & L,* 47 Fed.Appx. 183 (3d Cir.2002), quoting *Sempier v. Johnson & Higgins,* 45 F.3d 724, 728 (3d Cir.1995). If the plaintiff is able to establish a prima facie case, a presumption of age discrimination arises which the employer must rebut by providing a legitimate non-discriminatory reason for the adverse employment action. *Id.* As evidence of discrimination, a plaintiff may show that other, younger employees were retained or otherwise treated more favorably and that he or she is similarly situated in terms of qualifications and position to the employees retained. *See, e.g., Showalter v. University of Pittsburgh Medical Center,* 190 F.3d 231, 236 (3d Cir.1999); *Maidenbaum v. Bally's Park Place, Inc.,* 870 F.Supp. 1254, 1259 (1994) *aff'd w/o opinion,* 67 F.3d 291 (3d Cir.1995).

■ To defeat a summary judgment motion based on a defendant's proffer of a nondiscriminatory reason, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its

action that a reasonable factfinder could rationally find them unworthy of credence. *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir.1994).

■ In this case, plaintiff contends that she has presented sufficient direct evidence of discrimination to survive summary judgment such that the Court need not analyze her case under the *McDonnell Douglas* theory. In this regard, the direct evidence consists of Ms. Glanzman's deposition testimony that some ten months prior to her termination, Glenn Fagan, the Vice President of Property Management, asked her if she had told the son of one of the residents that she was 63 years old and that shortly thereafter, Trish Kotsay, her immediate supervisor, had asked if she was thinking of retiring. Plaintiff also produced affidavits from two of her former co-workers that a few days before she was terminated, Glenn Fagan, commented that he wanted to fire her and "replace her with a young chippie with big tits." These affidavits, however, are contradicted by the same co-worker's deposition testimony that Glenn Fagan had made it very clear that the reason he was terminating the plaintiff was because he believed that she was taking property belonging to the defendant and that he never said that he was firing the plaintiff because of her age or breast size or so that he could replace her with an attractive young woman. (*See, e.g.*, Deposition of Joseph Fries, Exhibit "H" to Defendant's Motion for Summary Judgment at pp. 129–130). It is well-settled that when, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists. *Massachusetts School of Law at Andover v. American Bar Association*, 107 F.3d 1026, 1039 (3d Cir.1997); *Hackman v. Valley Fair*,

932 F.2d 239, 241 (3d Cir.1991). *See Also: Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806–807, 119 S.Ct. 1597, 1603–1604, 143 L.Ed.2d 966 (1999) (recognizing virtual unanimity in the Circuit Courts of Appeals that party cannot survive summary judgment simply by contradicting his or her own previous sworn statement by filing later affidavit that flatly contradicts that party's earlier sworn deposition). We therefore give these affidavits little credit.

■ However, even accepting these affidavits at face value, we do not believe they constitute sufficient direct evidence of discrimination. For one, while Mr. Fagan's alleged remark is certainly offensive, we note that it does not in and of itself reflect that the *reason* for Ms. Glanzman's termination was to replace her with a "young chippie with big tits." Second, we find nothing discriminatory in Fagan's inquiry into whether the plaintiff had told the resident's son her age nor can we conceive of how this question could in any way be construed to reflect animosity toward the plaintiff on the basis of her age. Finally, while Ms. Kotsay's inquiry into the plaintiff's retirement plans could lead to an inference of age discrimination, we note that it was made some ten months before her employment was severed. We further find that this question could just as easily lead to the inference that the company was trying to determine whether it need make future plans to find a replacement property manager (of any age) for plaintiff's position or financial arrangements to begin paying retirement benefits. *See Also: Greenberg v. Union Camp Corp.*, 48 F.3d 22, 28 (1st Cir.1995)(a single inquiry by an employer as to an employee's plans for retirement does not necessarily show animosity towards age).

■ Nevertheless, giving the plaintiff the benefit of every possible doubt and

finding that she has adduced a sufficient quantum of direct evidence of discrimination to shift the burden of persuasion on the issue of causation, we find that the evidence of record clearly demonstrates that the defendant-employer has shown that it would have fired the plaintiff even if it had not considered her age. Specifically, it is clear from the unrebutted deposition testimony and the declarations of all of the witnesses, including the plaintiff herself, that she was not always where she was supposed to be during working hours, she frequently did not respond timely when she was paged, she had two of the maintenance workers from Doylestown Meadows perform work on apartments which she herself owned and which were not part of the Doylestown Meadows complex, and she ordered a dishwasher for a Doylestown Meadows apartment which the tenant neither requested, needed or wanted. When Ms. Kotsay inquired into whether the dishwasher was to replace an existing one or whether it was part of an apartment renovation so she could determine how to record it, Ms. Glanzman lied by admittedly stating first that it was to replace a broken one and that the tenant herself had requested it but then later claiming that the tenant's daughter had requested it. When the company investigated the matter, it learned that the existing dishwasher in the apartment at issue was not broken, neither the tenant nor her daughter had requested a new one and in fact the tenant did not want one since she only used her dishwasher to store bread. The evidence of record further strongly suggests that the plaintiff intended to have that dishwasher installed in one of her own apartment units. In addition, the plaintiff had in the past accepted almost $1,000 worth of collect telephone calls from a friend on her office telephone and permitted her granddaughter to use the internet on her office computer. Although Glenn Fagan recommended that Ms. Glanzman be terminated for these infractions, which occurred approximately one to one and-a-half years before this cause of action arose, the defendant company gave her a second chance but required her to make restitution in exchange for keeping her job. Therefore, again giving the plaintiff the benefit of all possible doubt that her age was a determinative factor in her termination, the defendant has adduced more than sufficient evidence that it would have terminated her regardless of age on the basis of her past infractions, her misconduct in directing the maintenance men, leaving the premises without authorization during work hours, failing to timely respond to pages and on the company's suspicion that she was trying to steal a new dishwasher. We thus find that the defendant is entitled to summary judgment in this case proceeding under the *Price Waterhouse* theory.

 We reach the same conclusion under *McDonnell Douglas*. Here, there is evidence that (1) the plaintiff was 64 years old at the time she was fired and thus clearly fell within the protected class of those over 40 years of age; (2) she was qualified for the position in question, having served as the property manager at the apartment complex for some eleven years before her termination; (3) she suffered an adverse employment decision, having been severed from her position on October 2, 2001; and (4) she was replaced by a younger woman. (See Defendant's Answer to Plaintiff's Complaint, ¶ 23). Thus, Ms. Glanzman established a sufficient prima facie case to create a presumption of age discrimination and it is thus incumbent upon the defendant employer to rebut this presumption by providing a legitimate non-discriminatory reason for the adverse employment action. Again, the record evidence in this regard clearly demonstrates that the employer has met this burden by

showing that it terminated the plaintiff because she frequently was not where she was supposed to be during working hours and often did not respond timely when paged, that she had two of the maintenance workers from the apartment complex perform work on her own apartments, that she had a past history of violating company policy by accepting collect telephone calls from her imprisoned boyfriend and permitting her granddaughter to use the office computer, and she ordered a dishwasher for a Doylestown Meadows apartment which the tenant neither requested, needed or wanted and then lied about it, thereby suggesting to the defendant that she intended to steal it and have it installed in one of her own apartments. Given that the plaintiff has produced absolutely no evidence whatsoever that the defendant's proffered reason for her termination was a pretext for age discrimination or that it is not worthy of credence, we have no alternative but to conclude that she cannot defeat the instant motion for summary judgment under *McDonnell Douglas* either. Accordingly, judgment as a matter of law shall be entered with respect to Counts I and III of her complaint.

■■■ In Counts II and IV of the Complaint, plaintiff seeks to recover under theories of hostile environment and retaliation. As a general rule, to show retaliation a plaintiff must show that (1) she was engaged in protected activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) that a causal link exists between the employee's protected activity and the employer's adverse action. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir.2000). *See Also: Mraz v. County of Lehigh*, 862 F.Supp. 1344, 1348 (E.D.Pa.1994); *Centrella v. Barth*, 633 F.Supp. 1016, 1021

(E.D.Pa.1986). Although it is as yet unsettled whether the Third Circuit recognizes hostile environment claims in ADEA cases, it appears that to the extent that it does, there are five elements to such a claim: (1) intentional discrimination because of age which is (2) pervasive and regular, (3) has detrimental effects that (4) would be suffered by a reasonable person of the same age in the same position, and (5) that respondeat superior liability exists. *Jackson v. R.I. Williams & Associates, Inc.*, Civ. A. No. 98–1741, 1998 WL 316090, 1998 U.S. Dist. LEXIS 8805 (E.D.Pa. June 8, 1998); *Tumolo v. Triangle Pacific Corp.*, 46 F.Supp.2d 410, 412 (E.D.Pa. 1999). Generally speaking, to be successful in such hostile environment actions, a plaintiff must demonstrate that the workplace is "permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993), quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986).

■■ In applying these standards to the case now before us, we find that the sole basis for Plaintiff's hostile environment claim is what she believes to have been Mr. Fagan's excessiveness in paging her. Specifically, Ms. Glanzman relies upon her own deposition testimony and declaration that:

* Beginning in the Spring of 2001, Mr. Fagan would often page her continuously and repeatedly, frequently before work hours. When Plaintiff returned the page, Mr. Fagan would say that he had forgotten why he had paged her or that he intended to page someone else. Glenn Fagan would also page her when

she was in her office, in lieu of simply telephoning.

\* In August, 2001, she was repeatedly paged by Trish Kotsay and Glenn Fagan while at a doctor's appointment. When she returned to her office at Doylestown Meadows, Mr. Fagan was sitting at her desk and told her that he didn't care that she had gone to her Doctor with Ms. Kotsay's approval, that he had to check up on her because he didn't trust her.

\* Glenn Fagan once told her that she must keep her pager with her at all times, even when showering, and that if she didn't have pockets or a belt, she should keep the pager in her bra.

(See, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, pp. 8–9). While repeated pages may certainly be annoying, there is nothing on this record to show that they were discriminatory in nature or that they were intimidating or insulting. Accordingly, to the extent that a hostile work environment claim is cognizable under the ADEA and PHRA in this circuit, the plaintiff does not have adequate evidence to withstand the instant motion for summary judgment on this claim either.

■ Finally, we also find the evidence insufficient to support a claim for retaliation. In this regard, Plaintiff asserts that Defendant retaliated against her for her filing a claim for unemployment benefits by notifying her that she would have to vacate her rent-free Doylestown Meadows apartment by November 30, 2001 and by contesting her right to unemployment compensation. An adverse employment action necessarily encompasses all tangible employment actions such as "hiring, firing, failing to promote, reassignment or a decision causing a significant change in benefits." *Sherrod v. Philadel-* *phia Gas Works*, 57 Fed.Appx. 68, 73 (3d Cir.2003), quoting *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998). Such an action in most cases inflicts direct economic harm and requires an official act taken by a supervisor within the company who has the power to make economic decisions affecting employees under his or her control. *Ellerth*, 524 U.S. at 762, 118 S.Ct. at 2269. Similarly, a plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. *Galabya v. New York City Board of Education*, 202 F.3d 636, 640 (2d Cir.2000). To be "materially adverse," a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities; it might be indicated by a termination of employment, a demotion evidence by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities or other indices unique to a particular situation. *Id.*

■ Assuming that she was engaged in a protected activity in filing a claim for unemployment compensation benefits, we find that Plaintiff's proofs here fail with regard to the other two elements prerequisite to a retaliation claim. For one, we cannot find that Glanzman suffered an adverse employment action when the defendant opposed her claim for unemployment compensation benefits or when it informed her that her lease would end on November 30, 2001. Indeed, her employment at that point had already been terminated and there is no evidence (and no law of which we are aware) which demonstrates that she had an automatic entitlement to unemployment benefits or that she had any right to continue living in her

apartment rent-free.[2] Moreover, the record reveals that, despite Defendant's opposition, the plaintiff *did* receive the unemployment compensation benefits for which she applied and that notwithstanding the notice to quit, the plaintiff continued to reside in her apartment, rent-free, until January 4, 2002. Thus, there is absolutely no evidence that Ms. Glanzman suffered any economic harm as a result of the defendant's actions.

Additionally, there is no evidence that the reason for the defendant's decision to oppose the plaintiff's benefits application or in sending her the notice to quit was her engagement in the alleged protected activity. Rather, the evidence presented suggests that the defendant opposed the plaintiff's receipt of benefits because it believed that it had terminated her for good cause, *i.e.* her inadequate job performance and misconduct in having company workers perform work on her private properties, in lying to management and in attempting to steal a dishwasher. Given that plaintiff was no longer employed by it and that the agreement between the parties provided only for free housing during the duration of employment, Defendant was within its rights to send her a notice asking her to relinquish her apartment. Accordingly, we conclude that summary judgment is also properly granted in this matter on Counts II and IV of the plaintiff's complaint.

An order follows.

## ORDER

AND NOW, this 5th day of November, 2003, upon consideration of Defendant's Motion for Summary Judgment and Plaintiff's Response thereto, it is hereby OR-

DERED that the Motion is GRANTED and Judgment as a matter of law is hereby entered in favor of the defendant and against the plaintiff in no amount.

---

2. It does appear, however, that the plaintiff's lease did provide that 60 days' notice of termination was required to be given. As the defendant's letter was dated October 10, 2001 and gave the plaintiff only to November 30, 2001, it was not in compliance with the lease terms.